**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

RYAN O'DELL,                                           :
                                                      :
                    Plaintiff,                        :   Civil Action No. 23-cv-05621
                                                      :
v.                                                    :   **COMPLAINT FOR VIOLATIONS OF**
                                                      :   **SECTIONS 14(a) AND 20(a) OF THE**
EMAGIN CORPORATION, DR. JILL J.                       :   **SECURITIES EXCHANGE ACT OF**
WITTELS, ERIC BRADDOM, PAUL                           :   **1934**
CRONSON, ELLEN RICHSTONE,                             :
ANDREW G. SCULLEY, and BRIG.                          :   **JURY TRIAL DEMANDED**
GENERAL STEPHEN SEAY,                                 :
                                                      :
                    Defendants.                       :
                                                      :
---------------------------------------------------------  :

Ryan O'Dell ("Plaintiff"), by and through his attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal

knowledge:

1.      This is an action brought by Plaintiff against eMagin Corporation ("eMagin" or the

"Company") and the members of eMagin's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of Sections

14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a),

78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in connection with the

proposed acquisition of eMagin by affiliates of Samsung Display Co., Ltd. ("Samsung Display").

2.      Defendants have violated the above-referenced sections of the Exchange Act by

causing a materially incomplete and misleading Preliminary Proxy Statement on Schedule 14A

(the "Proxy Statement") to be filed on June 20, 2023 with the United States Securities and

Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy

Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Emerald Merger Sub, Inc. ("Merger Sub"), a wholly-owned subsidiary of Emerald Intermediate, Inc. ("Silk USA"), will merge with and into eMagin, with eMagin surviving as a wholly-owned subsidiary of Silk USA (the "Proposed Transaction").  Pursuant to the terms of the definitive agreement and plan of merger the companies entered into on May 17, 2023 (the "Merger Agreement"), each eMagin stockholder will receive $2.08 in cash (the "Merger Consideration") for each eMagin share owned.  Silk USA and Merger Sub are each affiliates of Samsung Display.

3.      As discussed below, Defendants have asked eMagin's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the analyses performed by the Company's financial advisor, Nomura Securities International, Inc. ("Nomura") in support of its fairness opinion.

4.      It is imperative that the material information, which has been omitted from the Proxy Statement, is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.      For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to eMagin's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction), as Plaintiff alleges

violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.      Personal jurisdiction exists over each Defendant either because the Defendant

conducts business in or maintains operations in this District, or is an individual who is either

present in this District for jurisdictional purposes or has sufficient minimum contacts with this

District as to render the exercise of jurisdiction over Defendant by this Court permissible under

traditional notions of fair play and substantial justice.

8.      Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. §

78aa, as well as under 28 U.S.C. § 1391, because Plaintiff resides in this District.

**PARTIES**

9.      Plaintiff is, and has been at all relevant times, an owner of eMagin stock and has

held such stock since prior to the wrongs complained of herein.

10.     Individual Defendant Dr. Jill J. Wittels has served as a member of the Board since

August 2011 and is the Chair of the Board.

11.     Individual Defendant Eric Braddom has served as a member of the Board since

October 2018.

12.     Individual Defendant Paul Cronson has served as a member of the Board since July

2003.

13.     Individual Defendant Ellen Richstone has served as a member of the Board since

July 2014.

14.     Individual Defendant Andrew G. Sculley has served as a member of the Board since

2009 and is the Company's Chief Executive Officer.

15.     Individual Defendant Brig. General Stephen Seay has served as a member of the

Board since January 2006.

16.     Defendant eMagin is a company incorporated under the laws of the State of

Delaware and maintains its principal offices at 700 South Drive, Suite 201, Hopewell Junction,

NY 12533.  The Company's stock trades on the New York Stock Exchange under the symbol

"EMAN."

17.     The defendants identified in paragraphs 10-15 are collectively referred to as the

"Individual Defendants" or the "Board."

18.     The defendants identified in paragraphs 10-16 are collectively referred to as the

"Defendants."

## SUBSTANTIVE ALLEGATIONS

**A.     <u>The Proposed Transaction</u>**

19.     eMagin designs, develops, manufactures, and markets organic light emitting diode

(OLED) miniature displays on-silicon micro displays, virtual imaging products that utilize OLED

micro displays, and related products in the United States and internationally.  The company offers

super video graphics array (SVGA) + OLED micro displays; digital SVGA OLED-XL; and super

extended graphics array OLED-XL/XLS/XLE, SXGA OLED-XL, SXGA-120, VGA OLED-XL,

and WUXGA OLED-XL products.  It also provides 2K x 2K display, a 2K that is intended for

near-to-eye applications for high brightness, high resolution, high image quality, compact size,

and low power, such as virtual reality and avionics systems; design reference kits, which include

a micro display and associated electronics to help original equipment manufacturers (OEMs) to

evaluate micro display products; near-eye virtual imaging modules that incorporate its OLED-on-

silicon micro displays with its lenses and electronic interfaces for integration into OEM products;

prism optics, a molded plastic prism lens that permits its AMOLED micro displays provide

realistic images that can be viewed for extended periods with reduced eye fatigue; and driver

boards.  Its products are used in military aviation helmets, military weapons sights and targeting

systems, night vision and thermal imaging devices, training and simulation, visualization for ocular

surgery, mobile ultrasound, and augmented reality applications.  The Company was founded in

1996 and is headquartered in Hopewell Junction, New York.

20.    On May 17, 2023, the Company announced the Proposed Transaction:

> HOPEWELL JUNCTION, N.Y., May 17, 2023 (GLOBE NEWSWIRE) -- eMagin Corporation (NYSE American: EMAN) ("eMagin" or the "Company"), a U.S.-based leader in the development, design, and manufacture of Active-Matrix OLED microdisplays for high-resolution, AR/VR and other near-eye imaging products, today announced that the Company has entered into a definitive merger agreement with Samsung Display Co., Ltd. ("Samsung Display"), a subsidiary of Samsung Electronics Co., Ltd. (KRX: 005930) and manufacturer and distributor of display products. Under the terms of the agreement, all outstanding shares of eMagin common stock on a fully diluted basis will be acquired for $2.08 per share in cash, in a transaction valued at approximately $218 million.
>
> The purchase price represents a premium of approximately 10% to eMagin's closing stock price of $1.89 on May 16, 2023, and a premium of approximately 24% to eMagin's six-month volume-weighted average price of $1.68.
>
> "This agreement is a validation of our technical achievements to date including our proprietary direct patterning (dPd) technology, provides a significant premium for our shareholders, and represents a win for our customers and employees," said Andrew G. Sculley, eMagin's Chief Executive Officer. "By teaming with Samsung Display, we will be able to achieve the full potential of our next-generation microdisplay technology with a partner that can provide the resources and expertise we will need to scale production. Moreover, our customers will benefit from resulting improvements to our production capabilities in terms of yield, efficiency, and quality control."
>
> President & Chief Executive Officer of Samsung Display, Joo Sun Choi, emphasized the strategic significance of the acquisition, stating, "We expect XR (Extended Reality) devices to have

significant potential of growth in the future, and eMagin's technology in this space will enable Samsung to offer innovative products to more customers and strengthen its XR-related business."

Following the closing of the transaction, eMagin will continue to maintain its operations and facilities in Hopewell Junction, NY.

**Approvals and Timing**

eMagin's Board of Directors has unanimously approved the transaction and is recommending that eMagin's stockholders approve the transaction and adopt the merger agreement at a special meeting of stockholders to be called in connection with the transaction. Certain of eMagin's stockholders who collectively hold approximately 98% of the total voting power of eMagin's Series B Convertible Preferred Stock, which is convertible into approximately 21% of the total voting power of eMagin's common stock on a fully diluted basis, have entered into a support agreement pursuant to which they have committed to vote such shares in favor of the transaction.

The transaction is expected to close in the second half of 2023, subject to the approval by eMagin's stockholders, applicable regulatory approvals and other customary closing conditions. Until closing, eMagin and Samsung Display remain separate and independent companies.

**Advisors**

Nomura Securities International, Inc. is serving as exclusive financial advisor to eMagin. White & Case LLP and Goodwin Procter LLP are acting as the Company's legal counsel. Evercore Inc. is serving as exclusive financial advisor to Samsung Display and O'Melveny & Myers LLP is acting as legal counsel.[1]

* * *

---

[1] *eMagin Enters Into Definitive Merger Agreement With Samsung Display*, GLOBENEWSWIRE (May 17, 2023), https://www.globenewswire.com/news-release/2023/05/17/2671072/0/en/eMagin-Enters-Into-Definitive-Merger-Agreement-With-Samsung-Display.html.

21.     The Board has unanimously agreed to the Proposed Transaction.  It is therefore imperative that eMagin's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.      The Materially Incomplete and Misleading Proxy Statement**

22.     On June 20, 2023, eMagin filed the Proxy Statement with the SEC in connection with the Proposed Transaction.  The Proxy Statement was furnished to the Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction.  The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions.  However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

*Omissions and/or Material Misrepresentations Concerning Financial Projections*

23.     The Proxy Statement fails to provide material information concerning financial projections by eMagin management and relied upon by Nomura in its analyses.  The Proxy Statement discloses management-prepared financial projections for the Company which are materially misleading.  The Proxy Statement indicates that in connection with the rendering of its fairness opinion, the Company prepared certain non-public financial forecasts (the "Company Projections"), which were provided to the Board and Nomura to aid them in forming a view about the stand-alone valuation of the Company.  Accordingly, the Proxy Statement should have, but fails to provide, certain information and assumptions used in developing the projections that eMagin management provided to the Board and Nomura.  Courts have uniformly stated that

7

"projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-03 (Del. Ch. 2007).

24.     For the Company Projections, the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics: Adjusted EBITDA and Unlevered Free Cash Flow, but fails to provide line items used to calculate these metrics *and/or* a reconciliation of the non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a).

25.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied upon by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released in the Proxy with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

26.     The SEC has noted that:

> [C]ompanies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other

8

non-discretionary expenditures that are not deducted from the measure.[2]

27.    Thus, to cure the Proxy Statement and the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures so that the non-GAAP metrics included in the Proxy Statement are not misleading.

*Omissions and/or Material Misrepresentations Concerning Nomura's Financial Analyses*

28.    With respect to Nomura's *Precedent Transactions Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples of the transactions selected by Nomura for the analysis; and (ii) the basis for selecting the range of multiples of 2.7x to 4.0x.

29.    With respect to Nomura's *Comparable Companies Analysis*, the Proxy Statement fails to disclose: (i) the financial metrics and multiples of the companies selected by Nomura for the analysis; and (ii) the basis for selecting the ranges of multiples.

30.    With respect to Nomura's *Discounted Cash Flow Analysis – Base Case*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs and assumptions underlying the perpetuity growth rate of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 11.7% to 13.7%; (iv) the weighted cost of capital of the Company; (v) the number of fully diluted outstanding Company shares; and (vi) the net present value of the Company's U.S. federal and state net operating losses.

31.    With respect to Nomura's *Discounted Cash Flow Analysis – Illustrative Upside Case*, the Proxy Statement fails to disclose: (i) the terminal values for the Company; (ii) the inputs

---

[2] U.S. Securities and Exchange Commission, *Non-GAAP Financial Measures*, last updated Apr. 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

and assumptions underlying the perpetuity growth rate of 2.0% to 3.0%; (iii) the inputs and assumptions underlying the discount rates ranging from 10.7% to 14.7%; (iv) the weighted cost of capital of the Company; (v) the number of fully diluted outstanding Company shares; and (vi) the net present value of the Company's U.S. federal and state net operating losses.

32.     With respect to Nomura's *Equity Research Analyst Price Target Statistics* analysis, the Proxy Statement fails to disclose: (i) the research analyst reports observed; and (ii) the public market trading price targets for the shares of eMagin common stock prepared and published by the two equity research analysts in May 2023.

33.     With respect to Nomura's *Analysis of Implied Premia*, the Proxy Statement fails to disclose: (i) the transactions and the premia paid in those transactions; and (ii) the inputs and assumptions underlying the premia reference range of 27% to 68%.

34.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and he is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

**On Behalf of Plaintiff Against All Defendants for Violations of
Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100**

35.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

36.    Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

37.    Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.   Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

38.    In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.   Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).   The Individual Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders, although they could have done so without extraordinary effort.

39.    Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do

carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of

the Merger Agreement and the preparation and review of strategic alternatives.

40.     The misrepresentations and omissions in the Proxy Statement are material to

Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and

omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate

remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully

protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

41.     Plaintiff incorporates each and every allegation set forth above as if fully set forth

herein.

42.     The Individual Defendants acted as controlling persons of eMagin within the

meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as

directors of eMagin, and participation in and/or awareness of the Company's operations and/or

intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement

filed with the SEC, they had the power to influence and control and did influence and control,

directly or indirectly, the decision-making of eMagin, including the content and dissemination of

the various statements that Plaintiff contends are materially incomplete and misleading.

43.     Each of the Individual Defendants was provided with or had unlimited access to

copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to

and/or shortly after these statements were issued and had the ability to prevent the issuance of the

statements or cause the statements to be corrected.

44.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of eMagin, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

45.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

46.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

47.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

48.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and against the Defendants

jointly and severally, as follows:

A.      Preliminarily and permanently enjoining Defendants and their counsel, agents,

employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until Defendants disclose the

material information identified above which has been omitted from the Proxy Statement;

B.      Rescinding, to the extent already implemented, the Merger Agreement or any of

the terms thereof, or granting Plaintiff rescissory damages;

C.      Directing the Defendants to account to Plaintiff for all damages suffered as a result

of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable

attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and

proper.

**JURY DEMAND**

Plaintiff demands a trial by jury.

DATED: June 30, 2023

                                                            **WOLF HALDENSTEIN ADLER**
                                                            **FREEMAN & HERZ LLP**

                                                            /s/ *Benjamin Y. Kaufman*
                                                            Benjamin Y. Kaufman
                                                            Rourke C. Donahue
                                                            270 Madison Avenue
                                                            New York, NY 10016
                                                            Telephone: (212) 545-4620
                                                            Fax: (212) 686-0114
                                                            kaufman@whafh.com
                                                            donahue@whafh.com

14

*Attorneys for Plaintiff*